## APPEAL OF HANNAH HOCH.

### [Hoch v. Bass, et al.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF
BERK'S COUNTY, IN EQUITY.

Argued March 8, 1889—Decided April 29, 1889.

[To be reported.]

*(a)* The lessees of an ochre mine covenanted to pay for every ton of ochre
taken 25 cts., payable quarterly, and to take each year not less than 500
tons, " or pay for the same at the end of each and every year, in de-
fault of which the above lease is to be null and void."

*(b)* And further, " that if the (lessees) during any previous year or years
have taken away more than 500 tons of said clay or ochre, they shall not
pay more tons of clay or ochre than they have taken away during any
year, unless the aggregate number of tons amounts to less than 500 tons
per year."

*(c)* And " it is further agreed that if any of the covenants above mentioned
should not be complied with for the term of three months, then the
above lease is to be null and void."

1. The stipulation for the termination of the lease for the non-payment of
the royalty " at the end of the year," in par. (*a*) must be read togeth-
er with the general stipulation in par. (*b*) for the termination of the
lease " if any of the covenants above mentioned should not be complied
with for the term of three months."

2. Wherefore, though the unpaid royalty was due and demandable at the
end of a year from the date of the lease, yet a forfeiture of the lease
could not be asserted by the lessor until three months default had
elapsed after the end of the year.

3. Whether this was a case in which a bill would lie, or whether the rem-
edy at law by ejectment was adequate, and whether a demand for the
rent was a prerequisite to the plaintiff's enforcement of a forfeiture, not
decided.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

No. 362.January Term 1889, Sup. Ct.; court below, No. 379
Equity D. 1885, C. P.

On November 30, 1885, Hannah Hoch filed a bill in equity
against Albert R. Bass, Henry Weiler, J. Shannon, Samuel

Long and Nicholas Long. The bill averred that on October 21, 1884, the plaintiff and said Albert R. Bass entered into an article of agreement, called a lease, for the mining of clay or ochre on plaintiff's lands in Richmond township, providing:

" In consideration whereof, the said parties of the second part for themselves, their heirs, successors and assigns, covenant to pay to the said Hannah Hoch, her heirs and assigns, for every ton of twenty-two hundred and forty pounds in weight of clay or ochre taken away by them or their orders from the said premises, the price of twenty-five cents of lawful money of the United States, payable quarterly, . . . . . payment for the first quarter to be made on the first day of February, A. D. 1885, and then regularly every three months after that date. The said party of the second part for themselves, their heirs, successors and assigns agree to take away each and every year, during the term of their lease, not less than five hundred tons of said clay or ochre, or pay for the same at the end of each and every year, in default of which the above lease is to be null and void. It is to be understood that if the said parties of the second part, their heirs, successors and assigns, during any previous year or years, have taken away more than five hundred tons of said clay or ochre, they shall not pay more tons of clay or ochre than they have taken away during any year, unless the aggregate number of tons amounts to less than five hundred tons per year.

" It is further agreed, that if any of the covenants above mentioned should not be complied with for the term of three months, then the above lease is to be null and void, and the said parties of the. second part, their successors or assigns, shall have the right of taking down and removing from said premises, any buildings and machinery by them erected and remaining on said premises at the end of said term, providing they do so within three months after the expiration of said term.

" In witness whereof," etc.

The bill further averred, that Albert R. Bass made payment for the first quarter, but neglected or refused to make payment for any succeeding quarter; that neither said Bass, nor any one for him, took away each and every year 500 tons of clay or ochre, or paid for the same each and every year, in default

of which the said lease had become null and void; that in violation of the terms of the agreement, the said Bass, his agents or assigns, persisted in going upon the premises, mining and taking away clay or ochre. The prayers of the bill were: (1) Full and explicit answers. (2) That the defendants be restrained by injunction, preliminary until final hearing, thereafter to be made perpetual, from in any way entering upon any of said premises, and mining, digging and taking and carrying away any clay or ochre from the same.

The foregoing bill was filed in manuscript, and, a bond being presented and approved, a preliminary injunction was awarded and served. On December 17, 1885, a printed copy of the bill was filed and served and answer having been made by the defendants, *Mr. Horace A. Yundt*, was appointed examiner and master.

On June 18, 1888, the master filed a report, finding the following facts:

On December 20, 1884, Albert R. Bass assigned said lease to the Franklin Paint and Ochre Company, Limited, of which said company the said defendants are shareholders and members. The first quarterly payment of royalty was due February 1, 1885, and, amounting to $15.52, was paid by Albert R. Bass on February 25, 1885. This was for 139,100 lbs., or 62.1 tons, of ochre removed from the premises during said quarter. During the second quarter, ending May 1, 1885, and the third quarter, ending August 1, 1885, no ochre was removed from the premises and no payments of royalty were made. During the fourth quarter, ending November 1, 1885, no ochre was removed from the premises. In November, 1885, the defendants took away 22 tons and 5 cwt. of ochre. On January 18, 1886, Henry Weiler and Nicholas Long tendered said James M. High, plaintiff's agent, $109.48, and on January 20, 1886, they tendered the same amount to Hannah Hoch, the plaintiff. This tender was not accepted by either the said plaintiff or her agent, James M. High. No demand was made at any time on the said defendants or either of them by the said plaintiff or her agent for the payment of any royalty due under the lease.

Under these facts the plaintiff claimed that as the defendants did not pay her $125, or twenty-five cents a ton on 500 tons, at the end of the first year, the lease became null and void, or

that the default worked a forfeiture. The master found, however, as conclusions of law, that the burden of proving a forfeiture was on the plaintiff, and it must be clearly established: McKnight v. Kreatz, 51 Pa. 237; that the first requisite was a demand for the rent, and it was admitted that no such demand had been made; consequently, there could be no forfeiture: Jackson & Gross, L. & T. § 468; McCormick v. Connell, 6 S. & R. 151; Royer v. Ake, 3 P. & W. 461; Robert v. Ristine, 2 Phila. 62. He ruled also that under the stipulation: "It is further agreed that if any of the above mentioned covenants should not be complied with for the term of three months, then the above lease is to be null and void," the defendants could not be required to pay the royalty on the 500 tons until three months had elapsed after the expiration of one year from the date of the lease; that at the time the bill was filed, November 30, 1885, no right of action had accrued to the plaintiff, and before the expiration of the three months the defendants tendered the full balance of the royalty due for the first year of the lease. He therefore recommended a decree dissolving the preliminary injunction and dismissing the bill.

Exceptions filed by the plaintiff to the rulings of the master were overruled by the latter and renewed before the court, where after argument, they were dismissed by an opinion filed on February 11, 1889, HAGENMAN, P. J., which in part was as follows:

By the terms of the agreement, the defendants were granted the right to mine and carry away all the clay or ochre on the premises as if they were the owners of the land. In consideration of which right, the defendants were to pay to the plaintiff, the sum of twenty-five cents for every ton taken away, and pay the same quarterly, the first payment to be made February 1, 1885. And the defendants further agreed to take away each and every year 500 tons, or pay for the same at the end of each and every year, in default of which the lease to be null and void. If there was nothing else in the writing, it would be clear that the lease terminated on October 21, 1885. But the agreement finally concludes, "it is further agreed, that if any of the covenants above mentioned

should not be complied with for the term of three months, then the above lease is to be null and void." The plaintiff claims that this provision applies only to the stipulation in regard to the quarterly payments, and not to the 500 tons per annum. If this was the intention of the parties, it would have been expressly so mentioned. The covenant for removing 500 tons each year, or payment for the same, is the one which immediately precedes the one allowing three months time for payment. The agreement says, any of the covenants; not the quarterly payment covenant, but all of them. As the covenant for taking away 500 tons each year, or payment for the same, is followed by the further agreement that if any of the covenants above mentioned should not be complied with for three months, it must be understood to be included and embraced within it. No other fair construction can be put upon it. This is the interpretation which the master gave to the agreement.

With this construction of the agreement the plaintiff cannot recover.

At the time the bill in equity was filed and injunction granted, November 20, 1885, the royalty on the 500 tons was not due and demandable, and no right of action had accrued to the plaintiff. Before the expiration of three months from October 21, 1885, the defendants tendered the balance of the royalty which was due under the lease. It is therefore not necessary to consider the ground on which the master principally decided the case. He held that as no demand was made at any time on the defendants, or either of them, by the plaintiff, or her agent, for the payment of the royalty, the plaintiff cannot maintain her bill; that the first requisite was a demand for the royalty, and as none was made there was no forfeiture. We differ with the master. If this case turned on this question it would be with the plaintiff. The law in England and some of the neighboring states is as it was held by the master. The English decisions establish, that where the lease provides that the estate shall become null and void, or that the landlord may re-enter on breach of condition by the tenant, yet it is not void at all events, but voidable only, and until the landlord does some positive act to take advantage of it, the forfeiture is not absolute. In Pennsylvania the law is different. Here it depends

on the terms of the instrument.    Unless the landlord does some
act by which he waives the forfeiture, the forfeiture is complete.
No demand is necessary.    The cases of Sheaffer v. Sheaffer, 37
Pa. 525 ; Davis v. Moss, 38 Pa. 346, establish this position.

As the case does not turn on this point, we will not pursue
the inquiry further.

And now, February 11, 1889, it is ordered, adjudged and
decreed that the injunction heretofore issued in this case, be,
and the same is, hereby dissolved ; and, it is further ordered,
adjudged and decreed that the bill be dismissed; and it is
further ordered, that the plaintiff pay the costs.

Thereupon the plaintiff took this appeal, assigning as error
the dismissal of her exceptions, and the decree dissolving the
injunction and dismissing her bill.

*Mr. C. H. Ruhl* (with him *Mr. Daniel Ermentrout*), for the
appellant.

*Mr. Henry C. G. Reber* (with him *Mr. D. N. Schaeffer*), for
the appellees.

OPINION, MR. JUSTICE MITCHELL.

The lease between the parties contains the following clauses :

" The said parties of the second part . . . . . covenant to
pay to the said Hannah Hoch . . . . . for every ton of clay
or ochre taken, . . . . . twenty-five cents . . . . . payable
quarterly. . . . . The said party of the second part . . . . .
agree to take away, each and every year, . . . . . not less than
five hundred tons of said clay or ochre, or pay for the same at
the end of each and every year, in default of which the above
lease is to be null and void.   It is to be understood that if the
said parties of the second part, . . . . . during any previous
year or years, have taken away more than five hundred tons of
said clay or ochre, they shall not pay more tons of clay or ochre
than they have taken away during any year, unless the aggre-
gate number of tons amounts to less than five hundred tons
per year.

" It is further agreed, that if any of the covenants above
mentioned should not be complied with for the term of three

months, then the above lease is to be null and void, and the said parties of the second part, . . . . . shall have the right of taking down and removing from said premises, any buildings and machinery by them erected and remaining on said premises at the end of said term, providing they do so within three months after the expiration of said term."

The principal question in the case is whether the stipulation for termination of the lease for non-payment of the royalty "at the end of the year," is a separate agreement which stands by itself, or whether it is included in the general stipulation, in the next clause, for termination of the lease if "any of the covenants above mentioned should not be complied with for the term of three months."

The learned judge below held, and rightly, that the two must be read together, and the first included in the second.

The language of the first covenant—"pay for the same at the end of each and every year, in default of which the above lease is to be null and void "—taken literally, and by itself, might be construed to impose the forfeiture for failure to pay on the day named, but the context makes it quite clear that such was not the intention of the parties. An examination of the whole clause shows that the amount of rent payable at any particular day is not fixed or ascertainable beforehand. It is to be computed at the rate of twenty-five cents a ton on all the clay mined, but without any stipulation that any mining shall be done in any particular quarter. The whole five hundred tons might be mined in the first quarter, and the year's rent would then be due on the first quarter day. If no more should be mined during the next three quarters, there would be no rent due at the end of the year. On the other hand, if more were mined, the additional royalty would be due therefor, and this could not be determined until the end of the day itself. But this is not all. The stipulation is to pay for five hundred tons each year, whether mined or not, but if a thousand tons should have been mined and paid for last year and none at all this year, still no rent would be due this year, nor until the aggregate should be less than five hundred tons per year for the whole time.

It is thus clear that the rent was not a sum certain, due on the days stated, but varied from time to time, and required a computation, if not a settlement of accounts, not only from

quarter day to quarter day, but even from year to year. That the parties meant to impose a forfeiture sharply for failure to pay on the very day a fluctuating sum thus incapable of ascertainment until the day itself, would be sufficiently improbable, even if this clause stood alone. But taken in connection with the very next following clause, which in express terms applies to all the covenants of the lease, including the payment of the rent, it is entirely clear that a margin is intended to be allowed for accidents and delays, and forfeiture is not to be imposed until a default or breach for three months. The two clauses can stand quite harmoniously together with this reading. The first is intended to declare in express terms that payment of the minimum annual rent is a necessary condition to the continuance of the lease, and the second to fix the duration of the breach which shall incur the forfeiture. The learned judge below went a step too far in saying that the rent was not due when the bill was filed. It was due and demandable, and could have been sued for, at the end of the year, but the forfeiture did not arise until it had been thus due and unpaid for three months.

As this view of the covenants in the lease sustains the judgment upon substantially the same grounds as those taken by the learned judge below, it is not necessary to discuss the other questions, whether this was a case in which a bill would lie, or whether the remedy at law by ejectment was not adequate, and whether a demand for the rent was a prerequisite to complainant's enforcement of the forfeiture.

Judgment affirmed.